CENTRAL AMERICAN COMMERCIAL CO. v. PACIFIC MAIL S. S. CO.

(District Court, N. D. California, First Division. October 27, 1913.)

No. 13,603.

SHIPPING (§ 122*)—LOSS OF CARGO—LIABILITY OF VESSEL—NEGLIGENT LOADING.

A steamship *held* liable for the loss of a piece of machinery weighing 4,200 pounds which fell into the sea while being taken on board from a lighter by employés of the vessel by reason of the cutting of the ropes forming the sling by which it was being hoisted, on the sharp edge of a plate on the vessel; no adequate precautions having been taken to prevent such an occurrence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 452, 453, 456, 457; Dec. Dig. § 122.*]

In Admiralty. Suit by the Central American Commercial Company against the Pacific Mail Steamship Company. Decree for libelant.

Van Ness & Denman and R. P. Henshall, all of San Francisco, Cal., for libelant.

Knight & Heggerty, of San Francisco, Cal., for respondent.

DOOLING, District Judge. The libel herein sets forth the delivery in July, 1905, of one compressor frame of the value of $1,311.98 to respondent at Panama, to be carried to the port of Corinto Nicaragua, and the failure of respondent to deliver the same at any time thereafter, averring that it was lost in the sea while respondent was attempting to load it on board its steamer Aztec, because of improper loading. Respondent denies all negligence and impropriety in the loading, claims that the frame was lost through perils of the sea, or by reason of latent defects in its loading appliances which it was impossible to discover beforehand, and also attempts to avail itself of two certain provisions in the bill of lading, one to the effect that:

"Unless written demand for damage shall be made upon the carrier liable therefor, or upon the carrier which actually delivered the goods, within ten days after delivery, all claims for damage shall be taken to have been waived, and no suit shall thereafter be maintainable to recover the same."

And the other to the effect that:

"The carriers shall not become liable for any value exceeding $100.00, upon each package unless the value exceeds that amount and is so expressed in the bill of lading."

In paragraph 7 of the second amended answer, filed May 4, 1909, the bill of lading is set out in full, together with a statement of the manner in which, according to the contention of respondent, the loss of the compressor frame occurred; the said paragraph concluding with the following averment:

"That in and by the terms of the said written contract and bill of lading this respondent is not liable or responsible for, and is exempted from all responsibility for any loss or damage to or the loss of the said compressor frame, under the circumstances thereof hereinbefore stated; and the respondent hereby claims the benefit and protection of each of the terms and stipulations and all of the provisions of said written contract and bill of lading applying to and affecting the loss of said compressor frame as aforesaid, and exempting and relieving respondent from any and all liability and responsibility therefor."

There is in said paragraph 7 no averment that written demand for damage was not made within ten days, nor any averment that the value of said frame was not expressed in said bill of lading; but in paragraph 8 of said answer the provisions of the bill of lading as to written demand were set up as a special defense, and it was in said paragraph averred that no such demand was made, and in paragraph 9 of said answer the provisions as to limiting liability to a value of $100 were set up as a special defense with the averments that no value was expressed in the bill of lading for said compressor frame, and that said compressor frame constituted one package, and that the same was not expressed in said bill of lading to exceed in value $100. To each of these paragraphs exceptions were interposed and sustained, thus eliminating them from the answer. Thereafter, however, a stipulation was signed by the proctors for libelant and respondent and filed herein, containing certain amendments to the libel set out in three paragraphs numbered 3, 4, and 5, and containing further certain amendments to the answer, answering said paragraphs 3, 4, and 5, and also containing the following language:

"And the respondent alleges and avers that the only contract or agreement relating to the carriage and delivery thereof, and that the truth and the facts as to the same and the loss of said compressor frame, and everything relating thereto are set out and stated and alleged in article and paragraph 7 of the 'Second Amended Answer' now on file in said court and cause. Said article and paragraph being therein entitled 'For a Further and Separate Answer to the said Libel,' all of which said further and separate answer contained in said paragraph 7 is hereby referred to and made a part hereof with the same force and effect as if specially copied and repeated in this answer to said substituted and amended articles 3, 4, and 5 of said libel.

"It is stipulated further that nothing herein contained shall avoid or affect or abrogate in any way or manner whatever the orders of said court heretofore made herein sustaining the exceptions of libelant to certain parts of the said second amended answer of the respondent herein."

It is by virtue of this stipulation that respondent claims that all of said paragraph 7 is reinstated as a part of its answer herein, and that

by virtue of such reinstatement it may avail itself of the defenses arising from the provisions of the bill of lading requiring written demand for damage, and fixing the liability for loss at not more than $100. It does not seem necessary to determine to what extent the averments of paragraph 7 are now a part of the answer on file as regards these special defenses. It would seem that the last portion of the stipulation would at least prevent respondent from availing himself of any defense based upon the provisions as to demand and value in view of the fact that each of these provisions had been theretofore set up as separate defenses in separate paragraphs with appropriate averments to show that said provisions were applicable here, and the further fact that those defenses had been by the order of the court expunged. But it is not necessary to determine even that, for paragraph 7 contains no averments that demand was not made, or that value was not expressed, so that the defenses based upon these provisions are not pleaded and are not before the court. This brings us then to the only remaining question: "Was the compressor frame lost through the negligence of respondent while loading it aboard its steamer at Panama?" The only testimony bearing on this question is that contained in the deposition of Ryland Drennan taken on behalf of respondent, but introduced at the trial by libelant. Drennan was an officer of respondent, and was present at the time the frame was lost, and, although he testifies generally that the loading was properly done and that all the appliances for such loading were in good order and properly handled, yet his account of the actual occurrences at the time of the loss was, briefly summarized, as follows:

Respondent was loading this frame from a lighter alongside its steamer by means of a boom supported by various blocks and tackle. This work was being done by its own men, the crew of the Aztec. The Aztec was on an even keel, in a sheltered harbor. From the lighter to the deck of the Aztec was about 18 feet. This frame was one of about ten pieces of machinery belonging to this consignment and was the last to be taken from the lighter. All the others had been safely loaded. The frame weighed about 4,200 pounds and was from 6 to 8 feet in length, 2 feet wide, and 4 feet high. It was placed in a sling and was to be raised by means of a heavy Manila rope attached by a series of blocks to the boom. The signal was given and the frame was lifted a little bit from the lighter, and, as its weight was taken up, it released the lighter so that it drew away from the ship, and the piece of machinery fell against the ship's side, and the sling or the rope by which it was supported struck the sharp corner of a plate, causing it to cut under the strain, and the rope severed, and the machinery was lost overboard. It was cut on a plate above the boot top. All of these plates are very sharp, especially where they come from the butts. There was no guy attached to hold it off from the side of the ship so that it would not strike these plates, but the man probably tried to steady it.

I am satisfied that these facts show that the loss occurred by reason of respondent's failure to properly load the frame aboard its steamer.

To permit a rope at the end of which is a weight of over two tons to strike against a sharp plate, and to make no provision to prevent it, other than the attempt of a man on the lighter to steady it with his hands, is almost to invite disaster. The respondent will therefore be held liable for the value of the frame, and the case is referred to the commissioner to ascertain and report the same.